IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KENYANA LOWERY,                 )
                                )
            Plaintiff,          )
                                )
        v.                      )       1:20-CV-888
                                )
FORSYTH COUNTY SHERIFF'S        )
DEPARTMENT, et al.,             )
                                )
            Defendant.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This is an action arising out of an alleged failure to provide
proper medical treatment to a pretrial detainee. Before the court
are the motions to dismiss of Defendant A. Jennings (Doc. 31) and
Defendant WellPath Health Care ("WellPath") (Doc. 33), as well as
*pro se* Plaintiff Kenyana Lowery's motions for initial pretrial
order (Doc. 24), default judgment (Docs. 38, 47), settlement
conference (Doc. 39), and appointment of counsel (Doc. 49). The
parties have filed responses to each of these motions. For the
reasons set forth below, the motions to dismiss will be GRANTED,
and Lowery's motions for initial pretrial order, default judgment,
settlement conference, and appointment of counsel will be DENIED.

I.   **BACKGROUND**

The facts, either not in dispute or viewed in the light most
favorable to Lowery as the non-moving party, establish the
following:

Lowery is a pretrial detainee at the Forsyth County Detention Center ("Detention Center") awaiting resolution of pending criminal charges. (Doc. 2 at 3, 8.) On June 5, 2020, Lowery was moved to the segregation unit within the Detention Center. (Id. at 14.) Upon arrival, Lowery "was violently rushed by SRT officers, slammed to the ground and forced into a hogtie position." (Id.) This caused Lowery "extreme pain and an unability [sic] to breathe regularly" for "6 to 10 minutes," all while Lowery informed officers he could not breathe. (Id.) At one point during the struggle, Lowery lost consciousness. (Id.)

Soon thereafter, the officers left Lowery's cell. (Id.) Defendant Jennings, a nurse employed by Defendant WellPath, then came into Lowery's cell to evaluate him upon his arrival to the segregation block. (Id.) Despite what Lowery reports as a clear indication that he was unable to breathe due to the struggle with the officers, Jennings "did nothing" to treat his condition. (Id.) Lowery continued to suffer breathing complications and regularly complained to staff within the Detention Center. (Id.) Lowery's health continued to decline as a result of his preexisting asthma. (Id.) The altercation with detention officers exacerbated his underlying breathing problems, forcing Lowery to carry an inhaler that he may use up to four times a day as well as engage in treatment for his asthma. (Id. at 31.) Lowery did not begin receiving treatment for his breathing problems until June 13, over

2

a week after the altercation with officers, and he continues to have trouble with his breathing. (Id. at 14.)

On August 14, 2020, Lowery filed a grievance with the Detention Center. (Id. at 34.) In his grievance, he claimed: "SRT [officers] used excessive force against me using the hogtie method to restrain me which cause[d] or triggered breathing problems which I now suffer from." (Id.) The grievance, however, was rejected, because Detention Center policy requires grievances to be filed within 20 days of the underlying incident. (Id.) After his grievance was denied, Lowery spoke with four officers and requested to meet with the Sheriff of Forsyth County; however, he made no formal appeal of the denial of his grievance. (Id. at 34-35.) Instead, on September 30, 2020, Lowery filed the present lawsuit pursuant to 42 U.S.C. § 1983 alleging claims fashioned as reckless endangerment, excessive force, cruel and unusual punishment, deliberate indifference, and unlawful professional judgment. (Id. at 4.)

## II. ANALYSIS

### A. WellPath's Motion to Dismiss

In addition to other assertions, WellPath argues that the court should dismiss Lowery's complaint for improper service. (Doc. 34 at 9.) Lowery's summons incorrectly lists the address for the Detention Center instead of WellPath's address. (Doc. 23 at 1.) Nevertheless, the United States Marshals Service served

3

the summons and complaint on Pamela Cane, a health services administrator with WellPath.[1] (Doc. 27.) WellPath argues that Cane is not an officer, director, or managing agent of WellPath and therefore that service was improper. (Doc. 34 at 11.)

A civil action is commenced by the filing of a complaint and the issuance of a summons by the clerk of court. Fed. R. Civ. P. 4(b). The summons commands a defendant to appear and must be served with the complaint on each defendant. Fed. R. Civ. P. 4(a) & (c). Service must be made in accordance with the rules. See, e.g., Fed. R. Civ. P. 4(e) & (j); N.C. R. Civ. P. 4(j). Further, Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served [with the complaint and summons] within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."

The summons must be served on each defendant, along with a copy of the complaint, "by any person who is at least 18 years old and not a party" to the action. Fed. R. Civ. P. 4(c)(1)-(2). There are two ways to effectuate service on a corporation, such as WellPath: (1) in accordance with state law; or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing

---

[1] Lowery was granted *in forma pauperis* status in this case. Therefore, he relied on the U.S. Marshals Service to effectuate service. (Doc. 3.)

or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). The applicable state law -- the North Carolina Rules of Civil Procedure -- permits service on a corporation by (1) delivering a copy of the summons and complaint to an "officer, director, or managing agent of the corporation" or leaving a copy with a person apparently in charge of such person's office; (2) delivering a copy of the summons and complaint to an agent authorized to accept service or as authorized by law to be served in accordance with any statute; (3) by mailing a copy of the summons and complaint "registered or certified mail, return receipt requested" to an officer, director, or authorized agent; or (4) depositing a summons and complaint with an authorized delivery service pursuant to 26 U.S.C. § 7502(f)(2) addressed to the officer, director, or agent, and obtaining a delivery receipt. N.C. R. Civ. P. 4(j)(6).

When a defendant raises a defense pursuant to Federal Rule of Civil Procedure 12(b)(5), the plaintiff bears the burden of establishing compliance. Ballard v. PNC Fin. Servs. Grp., Inc., 620 F. Supp. 2d 733, 735 (S.D. W. Va. 2009)). And while Lowery is proceeding *pro se* and is entitled to a certain liberal construction of his complaint, Estelle v. Gamble, 429 U.S. 97, 106 (1976), the court need not ignore clear defects, Bustos v. Chamberlain, No. 3:09-1760-HMH-JRM, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009). Even *pro se* litigants must follow the proper procedural rules of

the court, and it is not the court's role to become an advocate for the *pro se* litigant. <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387, 391 (4th Cir. 1990).

Here, Lowery has failed to carry his burden. In fact, he has not responded at all to WellPath's contention that service was improper. In his summons Lowery did not list an address for WellPath upon which service should be effectuated; rather, he provided the address for the Detention Center. (Doc. 23 at 1.) Additionally, the summons and complaint were provided to Cain, who, according to WellPath, is not an officer, director, or managing agent of WellPath and is not otherwise authorized to accept service on WellPath's behalf. (Doc. 34 at 11.) Lowery has offered no response contesting WellPath's representation. Because Lowery's service of process fails to comply with the applicable rules, WellPath's motion to dismiss pursuant to Rule 12(b)(5) will be granted and Lowery's complaint as to Defendant WellPath will be dismissed without prejudice.[2]

## B. Jennings's Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to

---

[2] Lowery's claims against WellPath are largely the same as his claims against Jennings, which the court, for the reasons that follow, finds are deficient. Should Lowery seek to properly serve WellPath, he should rectify any factual deficiencies in his complaint before doing so.

dismiss pursuant to Rule 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

### 1. Lowery's alleged failure to exhaust

Jennings argues that Lowery's complaint fails to state a cause of action upon which relief can be granted, because he failed to exhaust his administrative remedies. (Doc. 32 at 3.) Lowery has filed a response in opposition. (Doc. 44.) Lowery does not respond with any legal argument but rather raises a general "objection to Defendants' motion to dismiss" in which he moves the court to "order the entry of a final Judgement [sic]." (Id. at 2.) Lowery also requested "the court to enter a pretrial conference order for final Judgment, or Trial." (Id. at 4.)

7

Inmates may file suits about prison conditions only if "administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). However, an inmate does not need to demonstrate exhaustion of administrative remedies in his complaint. Jones v. Bock, 549 U.S. 199, 216 (2007); see Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (Inmates "need not plead exhaustion, nor do they bear the burden of proving it." (internal quotations and citations omitted)). "Instead, failure-to-exhaust is an affirmative defense that the defendant must raise." Custis v. Davis, 851 F.3d 358, 361 (4th Cir. 2017) (citing Jones, 549 U.S. at 216). There are, however, exceptions to this rule, and a court may dismiss a complaint sua sponte "when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Id.

The relevant facility's grievance procedures determine the steps an inmate must take to satisfy the exhaustion requirement. Moore, 517 F.3d at 726. Jennings explains the exhaustion process set forth by the North Carolina Department of Corrections. (Doc. 32 at 3-4.) However, the Department of Corrections sets forth the administrative remedy procedure for "prisoners in the physical

8

custody of the Division of Adult Correction." N.C. Gen. Stat. §§ 148-118.1 – 148-118.8. Lowery is not in the custody of the Division of Adult Correction, because he is a pretrial detainee in a local facility -- the Forsyth County Detention Center. Jennings has not shown how the Department of Corrections' rules apply here.

There are two portions of the record which provide insight into the Detention Center's administrative remedy process. First are Lowery's responses to the "Exhaustion of Administrative Remedies Administrative Procedures" section in his *pro se* complaint. (Doc. 2 at 33-35.) There, Lowery made clear that he filed a grievance, that it was rejected, and that he continued to engage with officers in an attempt to address his grievances. (Id.) Specifically, Lowery wrote that he spoke with "Officer Grant on August 18, 2020," the day after his initial grievance was denied. (Id.) Lowery advises he "requested to speak with Sheriff Bobby Kimbrough on August 17, 2020 and filled out another request . . . on August 18, 2020 to speak with Kimbrough." (Id.)

The second portion of the record is a carbon copy "Inmate Grievance Form" dated August 17, 2020. (Id. at 38.) This form notified Lowery that his grievance had been rejected due to his failure to file the grievance within 20 days of the incident. (Id.) The form has spaces for Step II and Step III, presumably for the next stages of the Detention Center's administrative grievance policy. (Id.) At the bottom of the form, in bold text,

9

is a notice to the inmate that "[i]f you do not accept a response, you must appeal within 5 days of the response date." (Id.)

Exhaustion is an appropriate basis for dismissal when "all facts necessary to the affirmative defense 'clearly appear [] on the face of the complaint.'" Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). Lowery's complaint establishes neither his success nor failure in exhausting his administrative remedies. Jennings bears the burden of proving Lowery's failure to exhaust. Jones, 549 U.S. at 216. However, Jennings has not provided any evidence of the Detention Center's administrative remedy procedure. Additionally, Lowery notes that after the denial of his grievance form, he continued to engage in conversations with officers and attempted to meet with the Sheriff to discuss his grievance. (Doc. 2 at 34.) The court has no evidence as to what these conversations entailed or what the proper procedure is for appealing the rejection of a grievance request. However, there is some evidence that suggests that Lowery "attempted, but could not, exhaust his administrative remedies -- and thus, that he exhausted all remedies that were available to him." Custis v. Davis, 851 F.3d 358, 362 (4th Cir. 2017). Accepting as true the well-pleaded facts set forth in Lowery's complaint, as the court must at this stage, and given the lack of evidence adduced by Jennings, the court is compelled to conclude

10

that Jennings has not met her burden of showing Lowery failed to exhaust his administrative remedies.

### 2. Lowery's "deliberate indifference" claim

Jennings argues that to the extent Lowery's "deliberate indifference" claim is rooted in medical malpractice, his complaint should be dismissed because Lowery failed to satisfy the pleading requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure. (Doc. 32 at 5.) Lowery provides no argument in response. (Doc. 44.) Lowery's second cause of action claims "cruel and unusual [punishment] – deliberate indifferen[ce]," because Jennings showed deliberate indifference by "fail[ing] to act in response for the safety of a patient." (Doc. 2 at 4.)

Jennings argues that a plaintiff must first comply with Rule 9(j) of the North Carolina Rules of Civil Practice to bring a complaint for medical malpractice. (Doc. 32 at 5.) Rule 9(j) provides that "[a]ny complaint alleging medical malpractice by a health care provider . . . shall be dismissed unless," among other things, the medical care provided is reviewed by a medical professional "who is willing to testify that the medical care did not comply with the applicable standard of care." N.C. Gen. Stat. 1A-1, Rule 9(j)(1). Jennings cites to an unpublished Fourth Circuit case which noted that "district courts in this circuit are also unanimous that a Rule 9(j) certification is required to sustain a medical malpractice action . . . in North Carolina."

11

<u>Littlepaige v. United States</u>, 528 F. App'x 289, 292 (4th Cir. 2013).  However, in a more recent, published case, the Fourth Circuit rejected a similar certification requirement from West Virginia, concluding that the Federal Rules of Civil Procedure supplant state certification requirements.  <u>Pledger v. Lynch</u>, 5 F.4th 511, 518 (4th Cir. 2021).  Specifically, the Fourth Circuit held that West Virginia's requirement that a plaintiff raising medical liability claims first obtain and present expert support for their claims was in conflict with the Federal Rules of Civil Procedure and that "failure to comply with West Virginia's [Medical Professional Liability Act] is not grounds for dismissal" of a plaintiff's claims under the Federal Tort Claims Act.  <u>Id.</u>; <u>see</u> <u>Saylon v. United States</u>, No. 5:20CV176, 2021 WL 3160425, at *4 (E.D.N.C. July 26, 2021) (denying defendant's motion to dismiss on the basis of North Carolina's Rule 9(j) because "Rule 9(j) is not a substantive requirement for a medical malpractice claim, but rather a heightened pleading requirement which this court cannot apply in federal court to a FTCA claim.")  While the state certification requirement may no longer be required here, the court can assume, without deciding, that Rule 9(j) is inapplicable because Plaintiff's complaint founders on another basis.[3]

Jennings contends that Lowery's complaint fails to contain

---

[3] If Rule 9(j) were to apply, Lowery has produced no evidence that he satisfied the certification requirement.

sufficient allegations to make a claim of deliberate indifference plausible. (Doc. 32 at 8.) A state actor may be liable under § 1983 if she "subjects . . . an individual to the deprivation of any rights, privileges, or immunities secured by the Constitution." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002) (internal quotations omitted). To succeed on a § 1983 claim, "it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)). Courts evaluate a pretrial detainee's conditions of confinement in state custody under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979). "The due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). Therefore, "deliberate indifference to the serious medical needs of a pretrial detainee violates the [D]ue [P]rocess [C]lause." Young v. City of Mount Ranier, 238 F.3d 567, 575 (4th Cir. 2001).

The Eighth Amendment requires that prison officials "provide humane conditions of confinement," including "ensur[ing] that inmates receive adequate . . . medical care." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). To sufficiently plead a constitutional claim for deprivation of medical care, a plaintiff

13

must show that a state actor "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A defendant is deliberately indifferent when she knows of the risk of harm to an inmate and knows that her "actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." Id. (internal quotation marks omitted).  "The subjective component . . . sets a particularly high bar to recovery." Id.  "Deliberate indifference entails something more than mere negligence, . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835.

Neither "[n]egligence [n]or malpractice in the provision of medical services . . . constitute[s] a claim under § 1983." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).  A "significant delay in the treatment of a serious medical condition may, in the proper circumstances," constitute deliberate indifference in violation of the Eight Amendment. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008).[4]  A constitutional violation "only occurs, however, if the delay results in some substantial harm to

---

[4] While the Fourth Circuit does not accord precedential value to its unpublished opinions, it has noted that they "are entitled only to the weight they generate by the persuasiveness of their reasoning." See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted).

14

the patient." Id. at 166-67 (internal footnote omitted); accord
Sharpe v. South Carolina Dep't of Corr., 621 F. App'x 732, 734
(4th Cir. 2015) ("A delay in treatment may constitute deliberate
indifference if the delay exacerbated the injury or unnecessarily
prolonged an inmate's pain." (internal quotation and citation
omitted)); see also Wynn v. Mundo, 367 F. Supp. 2d 832, 838
(M.D.N.C. 2005) ("[T]his court is persuaded that delay in the
receipt of medical care only constitutes deliberate indifference
where the plaintiff can show that the delay caused substantial
harm.") (collecting cases), aff'd, 142 F. App'x 193 (4th Cir.
2005).

Lowery must show first that "the deprivation alleged was
objectively 'sufficiently serious,'" and second that Jennings
"acted with a sufficiently culpable state of mind." Scinto v.
Stansberry, 841 F.3d 219, 225 (4th Cir. 2016). Jennings argues
that Lowery has failed to satisfy either requirement. (Doc. 32 at
8-11.) Lowery alleges that Jennings "stood by while only inquiring
as to issues concerning the struggle [with officers] rather than
ways to assist me with better breathing." (Doc. 2 at 29.) In
doing so, Lowery contends, Jennings "offered no form of reasonably
adequate medical care to remedy" his difficulty breathing. (Id.)

Jennings argues that Lowery has failed to establish how the
eight-day delay between the altercation with officers and his
receipt of medical care resulted in substantial harm to Lowery.

15

(Doc. 32 at 10.) However, Lowery plainly claims that because of Jennings's "inaction to treat me[,] I have developed worser [sic] health conditions with my breathing." (Doc. 2 at 29.) Therefore, the court assumes without deciding, that Lowery has sufficiently alleged that the eight-day deprivation of medical care was sufficiently serious. Scinto, 841 F.3d at 225.

However, Lowery's deliberate indifference claim against Jennings nevertheless fails because he has failed to allege that Jennings possessed the requisite culpable state of mind. Jennings visited Lowery after the altercation with officers and "inquir[ed] as to issues concerning the struggle." (Doc. 2 at 29.) Lowery alleges Jennings focused on the struggle "rather than [on] ways to assist me with better breathing." (Id.) Lowery's dispute is that Jennings "offered no form of reasonably adequate medical care." (Id.) However, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Lowery does not allege he received no medical care from Jennings, rather that he received inadequate medical care. (Doc. 2 at 29.); see De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) ("a prisoner does not enjoy a constitutional right to the treatment of his or her choice . . . .")

Lowery's "allegation that his medical care was inadequate

16

would, at most, constitute a claim of medical malpractice." Wright, 766 F.3d at 849. Lowery has failed to allege sufficient facts to meet the subjective prong's "particularly high bar to recovery." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). As such, Jennings's motion to dismiss as to Lowery's deliberate indifference claim is granted and his claim will be dismissed without prejudice.

### 3. Lowery's Fourteenth Amendment claim

The final argument put forth by Jennings is that Lowery's cause of action for "unlawful professional judgment" under the Fourteenth Amendment is not a legally cognizable cause of action under the common law. (Doc. 32 at 7.) Lowery provides no argument in response.

Lowery claims Jennings is liable for her failure to abide by "proper professional precautions."[5] (Doc. 2 at 29.) However, this reiterates Lowery's argument that Jennings is liable for the "8 days in delay before [he] received urgent breathing medical care." (Id.) To the extent Lowery bases this claim on Jennings's alleged failure to follow professional standards, it is dismissed as duplicative of his claim for deliberate indifference. To the

---

[5] To the extent this reflects Lowery's claim for "unlawful professional judgment," it sounds in negligence or medical malpractice and is not a separate identifiable cause of action. As noted, "[n]egligence or malpractice in the provision of medical services does not constitute a claim under § 1983." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

17

extent that his claim is for a separate cause of action for engaging in some form of "unlawful professional judgment," his claim is dismissed as no such cause of action exists at common law. Richardson v. Wellpath Health Care, 2021 WL 1430698, at *1 n.1 (M.D.N.C. Apr. 15, 2021) (dismissing a claim for unlawful professional judgment because such a claim "reflect[s] only a layman's disagreement with a professional's judgment . . . not deliberate indifference"). Therefore, Jennings's motion to dismiss is granted as to Lowery's claim for unlawful professional judgment as well.

## C.  Lowery's Motion for Initial Pretrial Order

Lowery moves the court to enter a pretrial order pursuant to Federal Rule of Civil Procedure 16. (Doc. 24.) The Detention Center and Defendants Bobby F. Kimbrough, Rocky Joyner, J. Jessup, B. Clark, J. Sturkie, J. Inman, and D. Barrow have filed a response in opposition. (Doc. 26.)

Lowery is correct to note that Rule 16(b)(1) states that "the district judge . . . must issue a scheduling order." Fed. R. Civ. Proc. 16(b)(1). However, Rule 16(b)(1) further provides that this mandate does not apply "in categories of actions exempted by local rule." Id. Local Rule 16.1(a) notes that there will be a pretrial order except in "[c]ases brought by pro se plaintiffs or in which all defendants are appearing pro se." L.R. 16.1(a)(6). As Lowery is proceeding pro se, his motion seeking an initial pretrial order

is improper because his case falls under an exemption to Federal Rule of Civil Procedure 16. As such, Lowery's motion is denied.

### D. Lowery's Motion for Entry of Default

Lowery has filed a "Motion for Relief" which states, "Defendants Forsyth County Sheriff's Department, WellPath Health Care, and A. Jennings, fail[ed] to answer the plaintiff's complaint by 06/14/2021." (Doc. 38 at 1.) While Lowery cites 28a U.S.C. Rule 60, which permits a court to relieve a party from a final judgment or proceeding where justified, the context of Lowery's "Motion for Relief" is that Defendants failed to respond timely. Because the court dismissed Lowery's claims against WellPath and Jennings, his motion for default as to these two defendants will be denied as moot. Therefore, the court construes Lowery's motion as one for entry of default against Defendant "Forsyth County Sheriff's Department."

The Forsyth County Sheriff's Office ("Sheriff's Office") opposes Lowery's motion, arguing that the Forsyth County Sheriff's Department is not a legal entity capable of being sued and, even if it were, the Sheriff's Office is a responsive party because Sheriff Kimbrough timely responded in his official capacity to Lowery's complaint. (Doc. 46 at 4-6.) Alternatively, the Sheriff's Office argues that any claim against it is duplicative of Lowery's other claims against the individual officers in their official capacity. (Id. at 6.)

19

The Sheriff's Office is correct. The capacity of a governmental entity to sue or be sued in federal court is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b); Avery v. Cnty. of Burke, 660 F.2d 111, 113–14 (4th Cir. 1981). North Carolina General Statute § 153A-11 acknowledges that a county is a legal entity which may be sued, "but there is no corresponding statute authorizing suit against a North Carolina county's sheriff's department." Parker v. Bladen Cnty., 583 F. Supp. 2d 736, 740 (E.D.N.C. 2008). Accordingly, "the 'Sheriff's Office' is not a legal entity subject to suit under the law of North Carolina." Hargett v. Forsyth Cnty. Sheriff's Office, No. 1:03CV440, 2005 WL 4542859, at *2 (M.D.N.C. Sept. 29, 2005), aff'd, 172 F. App'x 27 (4th Cir. 2006); see Efird v. Riley, 342 F. Supp. 2d 413, 420 (M.D.N.C. 2004) (dismissing the Cabarrus County Sheriff's Department as a Defendant because "[t]here is no North Carolina statute authorizing suit against a county's sheriff's department"); Bailey v. Polk Cnty., 2011 WL 4565469, at *6 (W.D.N.C. Mar. 7, 2011) (holding that "the Defendant Polk County Sheriff's Department is not properly a defendant . . . for a . . . basic reason: it is not an entity capable of being sued"). Rather, the sheriff is a constitutional officer independent of county government. Parker, 583 F. Supp. 2d at 739. Because North Carolina law does not authorize suits against county sheriff's offices, Lowery's motion seeking default judgment against the

20

Forsyth County Sheriff's Department is denied.[6]

Additionally, Lowery has sued Forsyth County Sheriff Kimbrough in his official capacity. (Doc. 2.) Lowery effectuated service on Sheriff Kimbrough, and Sheriff Kimbrough has filed an answer to Lowery's complaint. (Doc. 16.) Therefore, even if the Sheriff's Office were a property entity to be sued, Lowery's suit against it would be duplicative as Lowery has already sued Sheriff Kimbrough in his official capacity. In other words, the "adversary process has [not] been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005); see Revene v. Charles Cnty. Comm'ns., 882 F.2d 870, 874 (4th Cir. 1989) (noting the sheriff in his official capacity was the "duly delegated policy maker for the county" and not the sheriff's department).

### E.    Lowery's Motion for Settlement Conference

Lowery next moves this court for a settlement conference pursuant to North Carolina General Statute § 7A-38.4A(c)-(d). (Doc. 39.) However, the Federal Rules of Civil Procedure govern civil actions in federal court. See Fed. R. Civ. P. 1. Pursuant to this court's Local Rules, settlement conferences are conducted after the initial Rule 26(f) conference. L.R. 16.4(a). Because

---

[6] Although the Forsyth County Sheriff's Department is not a proper entity capable of being sued in North Carolina, no Defendant has moved to have it dismissed.

Lowery is proceeding *pro se* and as discussed *supra*, the court has not issued a scheduling order and no pretrial conference has occurred. L.R. 16.1(a). Therefore, Lowery's motion for a settlement conference is denied, because North Carolina procedural rules do not control the procedure in federal court and Lowery's request is untimely as a pretrial conference has not yet occurred.[7]

### F. Lowery's Motion for Appointment of Counsel

Finally, Lowery moves the court to appoint him counsel. A plaintiff bringing a § 1983 claim generally has no right to appointed counsel. Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). The court may appoint counsel for a § 1983 litigant "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). "Whether the circumstances are exceptional depends on 'the type and complexity of the case, and the abilities of the individuals bringing it.'" Lowery v. Bennett, 492 F. App'x 405, 411 (4th Cir. 2012) (citing Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989)). If the *pro se* litigant "has a colorable claim but lacks the capacity

---

[7] Lowery has filed a supplemental notice in support of his motion for a settlement conference. (Doc. 53.) In it, he argues that, because the Defendants failed to respond to his motion, it should be granted. (Id.) Local Rule 7.3(k) notes that if a respondent fails to file a response, the motion will be considered uncontested and "ordinarily will be granted without further notice." However, consideration of the motion remains in the discretion of the court, and for the reasons stated, Lowery's motion warrants denial.

to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

Lowery has not demonstrated that this is an exceptional case warranting appointment of counsel or that he lacks the capacity to present his claims. Lowery has submitted numerous pleadings, has recited applicable statutory law, and remains heavily involved in litigating his own claims. He has not demonstrated that he is incapable of seeking his requested relief without counsel and has not otherwise demonstrated that appointment of counsel is necessary. Accordingly, his request for the appointment of counsel will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion to dismiss by Jennings (Doc. 31) is GRANTED, and the complaint against her is DISMISSED WITHOUT PREJUDICE, except for the claim for "unlawful professional judgment," which is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion to dismiss for insufficient service of process filed by WellPath (Doc. 33) is GRANTED, and the complaint against it is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Lowery's motions for an initial pretrial order (Doc. 24), default judgment (Docs. 38, 47),

23

settlement conference (Doc. 39), and appointment of counsel (Doc. 49) are DENIED.

   /s/   Thomas D. Schroeder
United States District Judge

March 29, 2022